**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **CYNTHIA STOVALL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 10-2388-STA-dkv** |
| | ) | |
| **DEWUN SETTLE, WALTER EVANS,** | ) | |
| **KENNY ARMSTRONG, and the** | ) | |
| **SHELBY COUNTY GOVERNMENT,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER GRANTING DEFENDANT SHELBY COUNTY'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Shelby County's Motion for Summary Judgment (D.E. # 17), filed on July 29, 2011. Plaintiff has not responded to Defendant's Motion. For the following reasons, the Motion is **GRANTED**.

## BACKGROUND

On July 28, 2009, Cynthia Stovall ("Plaintiff") filed her first sworn charge with the Equal Employment Opportunity Commission ("EEOC") alleging that the Shelby County Government ("Defendant") had discriminated against her on the basis of her age. (Def.'s Designation of Undisputed Material Facts, D.E. # 17-1, at 9.) On the EEOC's form, Plaintiff checked the box for "discrimination based on age." (*Id.*) She alleged that Dewun Settle ("Settle"), the Clerk and Master of Chancery Court, had subjected her to a hostile work environment since June 16, 2008, by slowly taking her responsibilities away from her and giving them to Veronica Nelson

1

("Nelson"), a manager in her early thirties. (*Id.*) Plaintiff also charged that her Manager B position was rescinded on June 30, 2009, and that Nelson was given her position. (*Id.*) On September 8, 2009, Plaintiff filed an amended charge with the EEOC alleging that she had suffered retaliation for filing a grievance regarding the elimination of her position. On or about February 25, 2010, the EEOC issued Plaintiff a notice of her right to sue. (*Id.* at 10.)

On May 25, 2010, Plaintiff filed a Complaint alleging violations of 42 U.S.C. § 1983, the Age Discrimination in Employment Act of 1967 ("ADEA"), and Title VII of the Civil Rights Act of 1964 as amended ("Title VII"). (Compl. ¶ 1.) Plaintiff requested $600,000 in damages and backpay, along with reinstatement, costs, and attorney's fees. (Compl. at 1.) Defendant filed a Motion to Dismiss all of Plaintiff's claims against Dewun Settle, Walter Evans, and Kenny Armstrong, as well as Plaintiff's § 1983 Claims against Defendant, on August 27, 2010. (D.E. # 3.) At the scheduling conference, Plaintiff's attorney, Richard Fields, advised the Court that Plaintiff consented to Defendant's Motion to Dismiss. (D.E. # 12.) Therefore, the only claims remaining in this case are Plaintiff's ADEA and Title VII claims against Defendant.

In the Complaint, Plaintiff noted that she is a former employee of the Shelby County Chancery Court. (Compl. ¶ 2.) Plaintiff alleged that she was "laid off because of her age and in retaliation for filing a grievance for her job elimination." (Compl. ¶ 3.) Plaintiff averred that a less qualified employee in her early thirties was given Plaintiff's position. (*Id.*) Plaintiff stated that she was fifty-seven years old when the case was filed in 2010. (*Id.*) Therefore, the Court interprets Plaintiff's Complaint as alleging claims of discrimination under the ADEA and under Title VII's retaliation provision. Defendant has submitted a Statement of Undisputed Material Facts in support of its Motion, and Plaintiff has not challenged these facts.

Plaintiff was born on July 7, 1952, and she is African American. (Def.'s Designation of Undisputed Material Facts, D.E. # 17-1, at 1.) She was hired by the Clerk and Master of the Shelby County Chancery Court, John Robertson ("Robertson"), on August 1, 1983, to work in the appeals area. (*Id.*) Robertson is white. (*Id.*) Plaintiff worked closely with Robertson, and she characterized him as fair and a "good guy." (*Id.* at 2.) Plaintiff does not allege that Robertson discriminated against her because of her age. (*Id.*) Plaintiff stated that Robertson discriminated against her by allowing only managers to attend seminars and conferences. (*Id.*) She filed an internal complaint, and as a result of her complaint, clerks were allowed to go to conferences. (*Id.*) Robertston retired in 1992 or 1993, and Plaintiff stated that she has not been discriminated against because of her race since that time. (*Id.*)

Plaintiff worked in the appeals area of Chancery Court until 1987. (*Id.* at 3.) After that, she began sitting in Chancellor Lewis's courtroom. (*Id.*) While Plaintiff was working at the clerk's office, she also worked with Floyd Peete, Jr. ("Chancellor Peete"), who was sworn in as Chancellor in 1990. (*Id.* at 2.) Chancellor Peete is African American. (*Id.*) When he took office, Chancellor Peete retained Plaintiff as his courtroom clerk. (*Id.*) Since he took office, Plaintiff has not complained of race discrimination at any time, and she asserted that she has had no reason to complain of race discrimination in Chancery Court. (*Id.* at 3.) Previously, one comment on the basis of race made by a co-worker who retired twenty years ago offended Plaintiff, but that was the last time anyone in Chancery Court offended her because of her race. (*Id.* at 2.)

Defendant identifies the next event in Plaintiff's employment history relevant to this action as Plaintiff's appointment to the position of Deputy Administrator B on January 16, 2002.

3

(*Id.* at 4.)  During the nearly four years she worked as Deputy Administrator B, Plaintiff earned between $58,000 and $62,760.  (*Id.*)  In November of 2005, Plaintiff's position was reclassified to the position of Manager B, which reduced her salary from $62,760 to $59,622.  (*Id.*)  In October of 2006, Plaintiff was appointed to the position of Manager B by Settle after he became Clerk and Master.  (*Id.*)  Settle is African American.  (*Id.*)

The positions held by Wanda Wright ("Wright") are also relevant to this case.  Wright is African American.  (*Id.*)  In November of 2005, Wright's position as Manager C was reclassified as Manager B, and her annual salary increased from $45,504 to $47,784.  (*Id.*)

On May 8, 2008, Settle informed Plaintiff that he would appoint Wright to the position of Chief Administrative Officer of Chancery Court.  (*Id.*)  The next day, on May 9, 2008, Plaintiff gave Settle a letter asking him to consider her for the Chief Administrative Officer position if it became available.  (*Id.*)  On May 16, 2008, Plaintiff submitted a "grievance letter" to Settle. (*Id.*)  In this letter, Plaintiff complained that Settle had selected Wright, a person with "fewer years of service," for the Chief Administrative Officer position.  (*Id.* at 4-5)  According to Defendant, Plaintiff did not allege that Wright was chosen for the position because Wright is younger than Plaintiff or that age was a factor in Settle's decision.  (*Id.* at 5.)  Rather, Plaintiff alleged that "favoritism and racism, not qualifications, have historically been the deciding factor in promoting certain employees in [the] office."  (*Id.*)  She also pointed to the "years of racial discrimination in the past in Chancery Court" as an alleged basis for Settle's decision.  (*Id.*)

On May 27, 2008, Plaintiff submitted a grievance to the Shelby County Office of Economic Compliance.  (*Id.*)  In this grievance letter, she complained that "[she] had worked all those years in Chancery [Court] with an administrator who skipped over qualified Black

employees to hire and promote less qualified White employees." (*Id.*)  However, in her deposition, Plaintiff stated that she did not complain that Settle was discriminating against her on the basis of her race.  (*Id.* at 6.)

Nearly one year later, in May of 2009, the Shelby County Board of Commissioners notified Settle that the budget for Chancery Court needed to be reduced by $55,250.  (*Id.*)  At this time, there were two Manager B positions filled: Plaintiff's, at a salary of $63,253, and Nelson's, at a salary of $48,608.  (*Id.*)  Plaintiff stated that the difference between her salary and Nelson's salary was due to Plaintiff's tenure with Defendant.  (*Id.* at 9.)  Upon consideration, Settle decided to eliminate the Manager B appointed position occupied by Plaintiff.  (*Id.* at 5.)  Defendant avers that Settle's decision to abolish Plaintiff's appointed position was a budgetary decision based on financial considerations.  (*Id.*)  If Settle had eliminated Nelson's Manager B position, he would have had to eliminate an additional position to achieve the required reduction of $55,250.  (*Id.*)  Defendant states that Settle did not consider Plaintiff's age in making the decision to rescind her appointment.  (*Id.*)

Plaintiff does not dispute that Settle needed to cut approximately $55,000 from the Chancery Court budget due to the directive of the Board of Commissioners.  (*Id.* at 7.)  In her deposition, Plaintiff admitted that Settle eliminated her position after the Chancery Court was instructed to reduce staff in a cost-savings measure.  (*Id.*)  Plaintiff felt offended when Settle rescinded her appointment to the Manager B position, as Plaintiff had been a loyal Chancery Court employee for many years.  (*Id.* at 8.)  Plaintiff believes that Settle discriminated against her because of her age.  (*Id.*)  But at her deposition, she also testified that she did not question the business judgement of the County Commissioners desiring budget cuts, nor did she question

Settle's "prerogative . . . to select any person he [chose]" to conform to the County Commissioners' budget cut requests. (*Id.*) Plaintiff's appointment to the Manager B position in Chancery Court was rescinded as of June 30, 2009, and that Manager B position was eliminated. (*Id.* at 7.)

Shortly after the elimination of her position, the Shelby County Division of Corrections permanently assigned Plaintiff to a Supervisor B position to begin on September 1, 2009. (*Id.* at 8.) Plaintiff was to earn $1,820.88 per pay period. (*Id.*) Plaintiff retired on March 1, 2011, because she had served twenty-nine years in various divisions of the Shelby County Government and her retirement plan had vested. (*Id.*) Defendant states that Plaintiff was not motivated to retire for any other reason. (*Id.*) Upon her retirement, Plaintiff earned $41,000 per year. (*Id.*)

Defendant submits that, since March 1, 2008, Shelby County Chancery Court has hired one person with a salary higher than $41,000. (*Id.*) That hire took place on April 1, 2010, to fill an Accountant B position. (*Id.*) Plaintiff neither applied nor was qualified for that position. (*Id.*)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that the

> court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[1]

In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.[2] When the motion is supported by documentary proof such as

---

[1]     Fed. R. Civ. P. 56(a).

[2]     *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

depositions and affidavits, the nonmoving party may not rest on his pleadings but instead must present some "specific facts showing that there is a genuine issue for trial."[3]  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[4]  These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[5]  When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[6]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[7]  In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action."[8]

## ANALYSIS

## ADEA

The ADEA establishes that it is unlawful for an employer

(1) to fail or refuse to hire or to discharge any individual or otherwise

---

[3]      *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[4]      *Matsushita*, 475 U.S. at 586.

[5]      *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[6]      *Id*. at 251-52.

[7]      *Celotex*, 477 U.S. at 322.

[8]      *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age, or (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age . . . .[9]

The Supreme Court has interpreted the first clause as proscribing intentional disparate treatment on the basis of age,[10] and the second clause has been interpreted as proscribing facially neutral employment practices with a disparate impact on age.[11]  Despite scant information in Plaintiff's Complaint, the Court interprets Plaintiff's Complaint as bringing an ADEA disparate treatment claim.  Plaintiffs can establish disparate treatment in violation of the ADEA using either direct or circumstantial evidence.[12]

To prove a disparate treatment case using direct evidence, a plaintiff would need to present "evidence which, if believed, *requires* the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."[13]  However, the Supreme Court has stated that "there is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age" and that such factors include "an employee's pension status or seniority, that is empirically correlated with age."[14]  Here, Plaintiff has not submitted any direct evidence requiring the conclusion that she was discriminated against

---

[9]     29 U.S.C. § 623(a).

[10]    *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993).

[11]    *Smith v. City of Jackson*, 544 U.S. 228, 240 (2005).

[12]    *Aldridge v. City of Memphis*, 404 F. App'x 29, 40 (6th Cir. 2010).

[13]    *Id.* (emphasis in original).

[14]    *Id.* (quotation omitted).

because of her age.  Therefore, if Plaintiff is to prove her case, she must do so using circumstantial evidence.

To establish a claim of disparate treatment using circumstantial evidence, courts apply the *McDonnell Douglas* analysis used in Title VII cases.[15]  Therefore, to prove a prima facie case of discrimination, plaintiffs are required to demonstrate four elements: (1) membership in a protected class, (2) subjection to an adverse employment action, (3) that they were otherwise qualified, and (4) replacement by someone outside the protected class.[16]  In the ADEA context, a plaintiff is a member of the protected class if he or she is forty years of age or older.[17]  The plaintiff's replacement must be younger than the plaintiff.[18]

If the termination arises as part of a work force reduction, the Sixth Circuit modifies "the fourth element to require the plaintiff to provide additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for impermissible reasons."[19]  The elimination of a single position is "sufficient to constitute a legitimate reduction in force [("RIF")]."[20]  The Sixth Circuit has noted that a RIF "occurs when business

---

[15]     *Id.*

[16]     *Lockett v. Marsh USA, Inc.*, 354 F. App'x 984, 992 (6th Cir. 2009).

[17]     *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 394 (6th Cir. 2008).

[18]     *See id.*

[19]     *Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009) (internal quotation marks omitted).  Such evidence can include management's favoring of younger workers, tendency to fire older workers, or indications in some manner that older workers were held in disfavor.  *See Puckett v. Arvin/Calspan Field Servs., Inc.*, 787 F.2d 592, at *5 (6th Cir. 1986).

[20]     *Lockett*, 354 F. App'x at 992.

considerations cause an employer to eliminate one or more positions."[21]  However, in all ADEA

cases in the Sixth Circuit, a court may not consider the employer's alleged nondiscriminatory

reason for taking an adverse employment action when it is analyzing the plaintiff's prima facie

case.[22]

Once a plaintiff satisfies her prima facie burden, the burden of production shifts to the

defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment

action.[23]  If the defendant meets that burden, the burden of production shifts back to the plaintiff

to show that the defendant's nondiscriminatory explanation is a mere pretext for intentional age

discrimination.[24]  At all times, the burden of persuasion remains on the plaintiff to demonstrate

that age is the "but-for" cause of the defendant's adverse action.[25]

In the RIF age discrimination context, it is especially important for courts to remember

that "age and years of service are analytically distinct;" because employers can take into account

one without considering the other, "it is incorrect to say that a decision based on years of service

is necessarily 'age-based.'"[26]

Defendant argues that Plaintiff has not presented any direct evidence of age

---

[21]     *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990).

[22]     *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir. 2003) (en banc).

[23]     *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998).

[24]     *Id.*

[25]     *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264 (6th Cir. 2010).

[26]     *Hazen Paper*, 507 U.S. at 611.

discrimination and that the Court should apply the ADEA's burden shifting analysis adopted from the *McDonnell Douglas* line of cases. Defendant admits that Plaintiff is a member of a protected class and that her appointment was rescinded, but Defendant submits that Plaintiff must come forward with additional direct, circumstantial, or statistical evidence that age was a determining factor in her termination to establish a prima facie case of age discrimination. Defendant also argues that Plaintiff's prima facie case of age discrimination fails because she was not replaced with a younger individual. In fact, Defendant has not hired another individual to fill a Manager B position since Plaintiff's position was eliminated.

Defendant also points out that even if Plaintiff can state a prima facie case of age discrimination, summary judgment in its favor is still appropriate because Defendant has presented a legitimate, non-discriminatory reason for its workforce reduction: cost savings. According to Defendant, Plaintiff would contend that Defendant's proffered reason is pretextual. However, Defendant argues that Plaintiff cannot prove that Defendant's financial explanation has no basis in fact and that Plaintiff has offered no evidence that financial considerations were an insufficient basis to make a staffing decision. Accordingly, Defendant avers that Plaintiff cannot show that Defendant's budgetary reasoning was pretextual. Therefore, Defendant concludes that its reason for eliminating Plaintiff's position rebuts her claims and that there is "no competent evidence from which a jury could reasonably find" that Defendant's budgetary reason was pretextual.

At the outset, the Court must determine whether to apply the direct evidence test or circumstantial evidence test. Because the Court finds that Plaintiff has not submitted direct evidence of age discrimination, the Court will apply the circumstantial evidence analysis.

Plaintiff is a member of the protected class, as she was over the age of 40 at the time of the alleged adverse employment actions. Therefore, she satisfies the first element of a prima facie case under the ADEA. An adverse employment action also occurred: Plaintiff's position was eliminated, and she had to find other employment. Accordingly, she also satisfies the second prima facie case element under the ADEA. Defendant does not dispute the validity of these two elements of Plaintiff's prima facie case.

However, because Defendant eliminated Plaintiff's position in an effort to cut costs, the Court finds that a RIF took place. Accordingly, to establish the fourth element of the prima facie case of age discrimination, Plaintiff must provide additional direct, circumstantial, or statistical evidence tending to indicate that she was singled out for impermissible reasons. Plaintiff is unable to satisfy this requirement. She has not responded to Defendant's Motion, nor has her deposition testimony provided this evidence. In fact, Plaintiff did not question Defendant's "prerogative . . . to select any person he chose" to fulfill the County Commission's budget cut requests. Although she may have taken offense to the rescission of her appointment after years of service with the Chancery Court, her mere belief that she was discriminated against because of her age fails to satisfy the modified fourth element of the prima facie case under the ADEA. Therefore, the Court finds that Plaintiff cannot make out a prima facie case of age discrimination, and her ADEA claim must fail.

Even if Plaintiff could state a prima facie case, Defendant has satisfied its burden of production with regard to its legitimate nondiscriminatory reason for its adverse employment action. Defendant has asserted that Settle eliminated Plaintiff's position as part of a RIF to cut costs. Such a reason is both legitimate and nondiscriminatory. Accordingly, the burden of

production would shift back to Plaintiff, and she would be required to show that Defendant's explanation is merely pretextual.

However, Plaintiff would be unable to do so. The evidence before the Court does not demonstrate that Plaintiff's age was even a motivating factor in Defendant's cost-cutting decision, and by extension, Plaintiff would not be able to prove the "but-for" causation required by the ADEA. Thus, even if Plaintiff could make out a prima facie case of age discrimination, Defendant has come forward with a legitimate nondiscriminatory reason, and Plaintiff has not put forth evidence of pretext.

Therefore, as there are no genuine issues of material fact, Defendant's Motion for Summary Judgment as to Plaintiff's ADEA claim is **GRANTED**.

### Title VII

In her Complaint, Plaintiff alleges that the rescission of her appointment and the elimination of her Manager B position constitute retaliation in violation of Title VII. In her Amended Charge of Discrimination filed with the EEOC, Plaintiff mentions that Settle "was slowly taking [her] responsibilities away from [her] and giving [her] duties to a younger manager," Nelson. She alleged that she had been discriminated against "in retaliation for filing a grievance regarding [her] elimination."

Title VII prohibits discrimination in employment on the basis of "race, color, religion, sex, or national origin."[27] Title VII also prohibits retaliatory discrimination against an employee "because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any

---

[27]     42 U.S.C. § 2000e-2(a)(1).

13

manner in an investigation, proceeding, or hearing under this subchapter."[28]  To make out a

prima facie case of retaliation under § 2000e-3(a), a plaintiff must establish that:

> (1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to the defendant; (3) the defendant thereafter took an adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action.[29]

As to the first prong of this test, whether the plaintiff engaged in a protected activity, the

Court must first consider whether the retaliation claim is based on an allegation that the

employee participated in any proceeding under Title VII (the "participation clause") or opposed

a practice declared discriminatory under Title VII (the "opposition clause") to determine the

scope of review of the employer's alleged action.[30]  "The distinction between employee

activities protected by the participation clause and those protected by the opposition clause is

significant because federal courts have generally granted less protection for opposition than for

participation in enforcement proceedings."[31]  If the adverse employment action against plaintiff

took place as part of a RIF, the plaintiff "must offer additional evidence tending to indicate that

the employer singled [him or her] out for discharge for impermissible reasons."[32]  Because

Plaintiff's Complaint does not specify whether the "filing [of] a grievance for her job

elimination" falls under the participation or opposition clause, the Court will evaluate her

---

[28]     42 U.S.C. § 2000e-3(a).

[29]     *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 412 (6th Cir. 2008).

[30]     *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989).

[31]     *Id.* at 1312.

[32]     *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 547 (6th Cir. 2004) (internal quotations omitted).

claims under both clauses.[33]

Additionally, cases which accept "mere temporal proximity between an employer's knowledge of the protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'"[34] When making this statement, the Supreme Court cited cases in which three- and fourth-month periods between the employer's knowledge of the protected activity and the adverse employment action were insufficient.[35] Therefore, when some time passes between the protected activity and the adverse employment action, plaintiffs are required to "couple temporal proximity with other evidence of retaliatory conduct to establish causality."[36]

If a plaintiff can establish these four elements of the prima facie case of retaliation, "the burden of production shifts to [the defendant] to articulate a legitimate, nondiscriminatory reason for the adverse action."[37] If the defendant meets that burden of production, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was merely a pretext for discrimination.[38] There are three bases for a defendant's reason to be pretextual: (1) it has "no basis in fact," (2) it "did not actually motivate the adverse action," or (3) it "was

---

[33]    (Compl. ¶ 3.)

[34]    *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam).

[35]    *Id.* at 273-74.

[36]    *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008).

[37]    *Kinamore v. EPB Elec. Util.*, 92 F. App'x 197, 202 (6th Cir. 2004).

[38]    *Id.* (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th Cir. 2000)).

insufficient to motivate the adverse action."[39]  If the plaintiff can show that the defendant's "proffered, nondiscriminatory reason was pretextual, unlawful retaliation may be inferred and she would be entitled to take her claim to a jury."[40]  Throughout this entire *McDonnell Douglas* framework, the plaintiff bears the burden of persuasion.[41]  Summary judgment on retaliation claims is appropriate where there are no genuine material facts at issue.[42]

Defendant argues that Plaintiff cannot establish a prima facie case of retaliation under the participation clause for two reasons.  First, Defendant avers that Plaintiff never engaged in protected activity.  Defendant submits that Plaintiff's 2008 written statements about Robertson's discrimination against her and other African Americans are not protected activity because "Robertson retired two decades before she made the statement."[43]  Moreover, Defendant cites to Plaintiff's concession that racial discrimination ceased in Chancery Court when Chancellor Peete took office in 1990.[44]

Second, Defendant asserts that Plaintiff did not suffer an adverse employment action because Plaintiff filed her grievance letter in May of 2008, and her position was rescinded at the end of June of 2009.  However, the Court interprets this argument as one alleging a lack of causation, especially as Defendant also briefly states that Plaintiff "has no competent evidence

---

[39]     *Id.*

[40]     *Id.*  (citing *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 344 (6th Cir. 1997)).

[41]     *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

[42]     *See Alexander v. Ohio State Univ. Coll. of Soc. Work*, 429 F. App'x 481, 488-91 (6th Cir. 2011).

[43]     (Def.'s Mem. in Supp. of its Mot. for Summ. J., D.E. # 17-2, at 13.)

[44]     (*Id.*)

of retaliatory conduct and, therefore, cannot establish causality."[45]  Additionally, Defendant avers that it has come forward with a legitimate, non-discriminatory reason for the elimination of Plaintiff's position: cuts to the Chancery Court budget.

## Participation Clause

The Sixth Circuit has explained that a prerequisite for protection under the participation clause is "the instigation of proceedings leading to the filing of a complaint or a charge, including 'a visit to a government agency to inquire about filing a charge[.]'"[46]  The Sixth Circuit has noted that "merely threatening to file a charge should not be construed under the participation clause."[47]  Importantly, if the alleged activity is considered under the participation clause, the law affords "exceptionally broad protections" to persons who have "participated in any manner" in Title VII proceedings.[48]  The Sixth Circuit has also held that "Title VII protects an employee's participation in an employer's internal investigation into allegations of unlawful discrimination where that investigation occurs pursuant to a pending EEOC charge."[49]

Here, Plaintiff's position was rescinded as of June 30, 2009, and she filed her first EEOC charge on July 28, 2009—after her adverse employment action.  Therefore, Plaintiff was not engaged in protected activity under Title VII's participation clause when her position was

---

[45]     (*Id.* at 14.)

[46]     *Booker*, 879 F.2d at 1313 (quoting *Polk v. Yellow Freight System, Inc.*, 801 F.2d 190, 200 (6th Cir. 1986)).

[47]     *Id.* at 1313 n.3.

[48]     *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 582 (6th Cir. 2000) (quoting *Booker*, 879 F.2d at 1312)).

[49]     *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 543 (6th Cir. 2003).

rescinded, nor was there an ongoing EEOC investigation or charge. Thus, she cannot meet the

first element of a prima facie case. Plaintiff's argument that her "grievance letter" qualifies as

participation also fails. Her May 16 grievance letter was written to her supervisor; such a letter

does not qualify as part of participation in a proceeding under Title VII. Moreover, her May 27

grievance letter to the Shelby County Office of Economic Compliance is not participation in a

proceeding under Title VII. Contrary to the situation in *Abbott*, there was no pending EEOC

charge or ongoing internal investigation into allegations of unlawful racial discrimination.

Consequently, Plaintiff has failed to make out the first element of the prima facie case of

retaliation for participation under Title VII, and this portion of her retaliation claim fails.

Even if she could demonstrate that the filing of one of her grievance letters qualified as

participation protected by Title VII, Plaintiff could not demonstrate the fourth element of the

prima facie case: causation. She filed her two grievance letters in May of 2008, and the

decision to eliminate her position was not made until nearly one year later, in May and June of

2009. The sheer length of time between her alleged participation and the adverse employment

action is too great for her to prove causation without demonstrating other evidence. But

Plaintiff has not provided any other evidence of racial discrimination; instead, she recanted

most of her allegations of racial discrimination at her deposition. Plaintiff asserted that aside

from one comment on the basis of race made by a coworker nearly twenty years ago, Plaintiff

has not been offended by anyone in Chancery Court because of her race or gender since that

time. The elimination of Plaintiff's position is so removed from the filing of her grievance

letters, and any other evidence of retaliation based on her alleged participation in a Title VII

proceeding would be so weak, that the Court finds that Plaintiff cannot make out a prima facie

case of retaliation under Title VII's participation clause.

Even if Plaintiff could make out a prima facie case under the participation clause, the Court finds that Defendant has met its burden of production of a legitimate, nondiscriminatory reason for the adverse employment action. Defendant has submitted that Plaintiff's position was eliminated due to budget cuts as a RIF. Additionally, the Court also finds that Plaintiff would be unable to demonstrate pretext under any of the three bases recognized by the Sixth Circuit. First, the budget cuts have a basis in fact: it is undisputed that Defendant needed to cut costs by approximately $55,000. Second, the length of time between the grievance letters and the adverse employment action and the lack of other causation evidence eliminate the possibility that the grievance letters actually motivated the elimination of Plaintiff's Manager B position. Third, budget cuts were not insufficient to motivate the cutting of Plaintiff's position; to the contrary, they sufficiently remove Defendant's legitimate, nondiscriminatory reason from the realm of pretext.

Accordingly, Plaintiff cannot demonstrate pretext even if she could demonstrate a prima facie case. Therefore, Plaintiff's claim for retaliation under Title VII's participation clause fails as a matter of law, and Defendant's Motion for Summary Judgment on this claim is **GRANTED**.

### Opposition Clause

As for the opposition clause, the Sixth Circuit has explained that "any activity by the employee prior to the instigation of statutory proceedings is to be considered pursuant to the opposition clause."[50] The Sixth Circuit has given examples of conduct protected by the

---

[50]        *Booker*, 879 F.2d at 200.

opposition clause, including "complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices; refusing to obey an order because the worker thinks it is unlawful under Title VII; and opposing unlawful acts by persons other than the employer [such as] former employers, union, and co-workers."[51]  Importantly, the opposition must be based on "a reasonable and good faith belief that the opposed practices were unlawful. In other words, a violation of Title VII's retaliation provision can be found whether or not the challenged practice ultimately is found to be unlawful."[52]

Here, unlike under the participation clause, Plaintiff has satisfied the first element of the prima facie case by engaging in protected conduct: she opposed Defendant's alleged racism. Her grievance letters, first to her supervisor and then to the Shelby County Office of Economic Compliance, included allegations of racial discrimination, and she spoke out against this alleged discrimination.  As required by the Sixth Circuit, her opposition took place before the instigation of statutory proceedings.  Therefore, the Court finds that Plaintiff has met the first element of a prima facie case of retaliation under the opposition clause.

However, Plaintiff ultimately fails to state a prima facie case of retaliation under the opposition clause for the same reason as addressed above under the participation clause: causation.  The lengthy attenuation between her two grievance letters and Settle's decision to eliminate the Manager B position she occupied, combined with a lack of additional evidence of retaliatory conduct, prohibit Plaintiff from proving causation.  Moreover, her deposition testimony contradicts the statements she made in her grievance letters.  In 2008 and 2009,

---

[51]      *Johnson*, 215 F.3d at 579.

[52]      *Id.* at 579-80.

Plaintiff alleged that racial discrimination was pervasive in Chancery Court; in 2011, Plaintiff stated that she had not been offended by or discriminated against because of her race for nearly twenty years. Therefore, the Court finds that Plaintiff has not made out a prima facie case of retaliation under the opposition clause.

Just as Plaintiff's participation claim fails, she cannot survive summary judgment on her opposition claim. Again, even if Plaintiff could state a prima facie case, Defendant has satisfied its burden of production by coming forward with the legitimate nondiscriminatory reason of cost cuts for its adverse employment action. As previously addressed under the participation clause, Plaintiff could not demonstrate pretext under the opposition clause. Therefore, because Plaintiff's claim for retaliation under Title VII's opposition clause fails as a matter of law, Defendant's Motion for Summary Judgment on this claim is **GRANTED**.

<u>**CONCLUSION**</u>

For the reasons set forth above, Defendant's Motion for Summary Judgment is **GRANTED**, and Plaintiff's claims are hereby dismissed with prejudice.

**IT IS SO ORDERED**.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: November 18, 2011.